[Cite as *State v. Cahill*, 2013-Ohio-3753.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :

                                       :       Appellate Case No. 25040

        Plaintiff-Appellee        :

                                       :       Trial Court Case No. 2010-CR-3609

v.                              :

                                     :

RONALD L. CAHILL            :       (Criminal Appeal from

                                     :       Common Pleas Court)

        Defendant-Appellant    :

                                     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of August, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

RONALD CAHILL, 1397 East Third Street, Dayton, Ohio 45402
      Defendant-Appellant, *pro se*

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Ronald Cahill appeals from his conviction and sentence for

Pandering Obscenity. He contends that his trial counsel was ineffective before trial for having failed to move to suppress the DVD forming the basis for the charge. He also contends that his trial counsel was ineffective during the trial.

{¶ 2} We conclude that the record does not bear out Cahill's contentions. Accordingly, the judgment of the trial court is Affirmed.

## I.   An Investigation Results in a Purchase of an
## Obscene DVD by an Undercover Police Officer

{¶ 3} Dayton Police Officer Jon Zimmerman received a report that child pornography was being sold at a video store on the 700 block of Troy Street, in Dayton. As a result of that report, Dayton Police Detective Raymond St. Clair began visiting the store, making the acquaintance of Cahill, who ran the store with one other individual.

{¶ 4} St. Clair, who was undercover, told Cahill he was interested in videos with young girls. Cahill had directed St. Clair to the back of the store, where videos with sexual content could be found. St. Clair purchased over 80 DVDs, over a period of several months. His purpose was to see if he could obtain evidence of child pornography. He never found any evidence that child pornography was being sold at the store.

{¶ 5} On July 12, 2010, during one of St. Clair's visits to the store, Cahill asked St. Clair if he was looking for anything unusual. When St. Clair said, "sure," and asked Cahill what he had, Cahill told St. Clair that Cahill had "f*ck videos involving animals, specifically dogs."

{¶ 6} St. Clair went back to the store the next day, July 13, 2010, for the purpose of purchasing the DVD featuring bestiality that Cahill had described. Because St. Clair knew that

if the DVD was as Cahill described it, Cahill would be violating the law by selling it, St. Clair equipped himself with a surreptitious video camera to record the transaction. When Cahill got the DVD from his backpack, Cahill told St. Clair that it was of "perfect quality," and that Cahill had been surprised by the length or number of sex acts within the video.

{¶ 7} St. Clair purchased the DVD, entitled "Animal Mix," from Cahill for $10, plus sales tax of 70 cents. The transaction was recorded on St. Clair's video camera.

{¶ 8} Before St. Clair had gone into the store, he noted, on the audiovisual recording, that it was July 13, 2010, and the time of day. He did this in part because the camera itself was designed to stamp a date and time on the recording, and it was showing a date of July 8, 2010. St. Clair explained that because it was a small camera, designed for undercover surveillance, the date-stamp could only be changed by hooking it up to a computer, and he did not know how to do that. It was showing the incorrect date.

{¶ 9} The investigation continued into October, 2010. At that point, St. Clair abandoned the child-pornography investigation, since no evidence had developed that Cahill or the store was dealing in child pornography.

## II. The Course of Proceedings

{¶ 10} Cahill was charged with one count of Pandering Obscenity, in violation of R.C. 2907.32(a)(2), a felony of the fifth degree.

{¶ 11} Cahill was tried to a jury. The State offered the testimony of Zimmerman and St. Clair, the audiovisual recording of the transaction, the "Animal Mix" DVD that St. Clair purchased from Cahill, and a DVD consisting of excerpts from the "Animal Mix" DVD. Cahill

presented no witnesses.

{¶ 12}   The jury found Cahill guilty as charged.   Cahill was sentenced to community control sanctions for a period not to exceed five years, and was classified as a Tier I sex offender.

{¶ 13}   From his conviction and sentence, Cahill appeals.   He assigns the following as errors:

THE PRIMARY ISSUE PRESENTED FOR REVIEW IS INEFFECTIVE ASSISTANCE OF COUNSEL.

THE TRIAL COURT ERRED BY FAILING TO ACT TO ASSURE THAT DEFENSE COUNSEL COMPETENTLY CONDUCTS A CRIMINAL CASE.

{¶ 14}   Cahill filed a document with this court on June 5, 2013, entitled Objection and Protest.   In that filing, Cahill objects to an earlier decision of this court rejecting his attempt to supplement the record.   Later in that document, Cahill appears to be submitting a Reply Brief on the merits of this appeal, first under the assumption that we will supplement the record, and then under the assumption that we will not supplement the record.   In a separate decision and entry, we are overruling Cahill's objection and noting his protest.   We have considered that part of Cahill's June 5, 2013 filing constituting a Reply Brief in deciding this appeal on the merits.

### III.   Trial Counsel Was Not Ineffective for Having Failed to Move to Suppress the Audiovisual Recording of the Sale, Because the Record Does Not Support Any Ground for a Motion to Suppress

{¶ 15}   Cahill first contends that trial counsel should have moved to suppress the

audiovisual recording that St. Clair made of the sale of the DVD forming the basis for the charge. He argues that the recording of the transaction was subject to suppression because the date stamped on the recorded image was not correct.

{¶ 16} St. Clair provided a reasonable explanation for the incorrect date stamp. In any event, the incorrect date stamp would not have provided a basis to suppress the evidence. Evidence is subject to suppression if it is obtained unlawfully. Here, there was nothing unlawful in the manner in which St. Clair obtained the audiovisual recording of the transaction.

{¶ 17} The incorrect date stamp on the recording would be a basis upon which to argue that it should be given less weight. In an extreme case in which evidence could be shown to have no indicia of trustworthiness, the evidence might even be inadmissible. In fact, Cahill's trial counsel did object to the admissibility of this evidence upon the ground of the incorrect date stamp. The trial court appropriately overruled this objection, and admitted the evidence. Cahill's trial counsel referred to the incorrect date stamp in opening statement, and in closing argument, attempting to cast doubt on the "integrity of the investigation." These were all appropriate actions by defense counsel. Defense counsel had no basis, however, for a motion to suppress the recording.

### IV.   Trial Counsel Was Not Ineffective for Having Failed to
### Move to Suppress All References to Child Pornography

{¶ 18} Cahill next contends that his trial counsel should have moved to suppress, before the trial, all references by the State to child pornography. Cahill, who is appealing pro se, here confuses pre-trial motions to suppress with pre-trial motions in limine. We agree with the State

that there was no basis upon which to keep out all references to the child pornography investigation.

{¶ 19}   The fact that St. Clair was investigating reports that child pornography was being sold out of Cahill's store served to explain why he was visiting the store and buying videos. More importantly, it served to explain why the investigation continued for several months after Cahill sold St. Clair the DVD forming the basis for the charge.  St. Clair only incidentally obtained the bestiality DVD; he was seeking to find child pornography.

{¶ 20}   Cahill's trial counsel did object when Zimmerman, the first witness, began testifying concerning the report he had received concerning Cahill's store.  The objection was interposed, and overruled, before Zimmerman testified that the report was that the store was selling child pornography.

{¶ 21}   It was made clear to the jury that no evidence was ever found that child pornography was being sold out of Cahill's store.  Cahill's trial counsel emphasized this in opening statement, and touched upon it again in closing argument.

{¶ 22}   Finally, the trial court gave an appropriate limiting instruction:

> The Court points out that on direct and cross-examination of Detective St. Clair and also Officer Zimmerman the witness gave testimony regarding child pornography during the course of his investigation.  These statements were not directly related to any issue in this case and the testimony was permitted solely for the purpose of explaining Detective St. Clair's investigation.  This case does not involve child pornography and you are instructed to disregard any reference which may have been set forth during Detective St. Clair's testimony that child

pornography was involved in this case.

{¶ 23}  We find no basis in the record for concluding that trial counsel was ineffective in this regard.

## V.  Trial Counsel Was Not Ineffective for Having Failed to Object to Inflammatory Remark by Prosecutor in Opening Statement

{¶ 24}  Cahill next contends that his trial counsel should have objected when the prosecutor, in her opening statement, referred to "F*ck videos with animals."  But as the State points out, the prosecutor was merely quoting the words used by Cahill, himself, when referring to the unusual items that St. Clair might be interested in.

{¶ 25}  The words Cahill used are significant, because they indicate clearly that he was aware of the obscene nature of the DVD he sold to St. Clair, and "knowingly" is the requisite mental culpability state for the offense.

{¶ 26}  Trial counsel was not ineffective for having failed to object to this remark.

## VI.  Trial Counsel Was Not Ineffective in his Opening Statement

{¶ 27}  Cahill makes a number of claims of ineffectiveness during his counsel's opening statement.  First, Cahill makes the remarkable claim that: "Attorney Carl Goraleski offered no alternative defense to the jury even though he knew that the Defendant had a perfectly valid defense."  Cahill does not enlighten us by telling us what his "perfectly valid defense" was.  There is an audiovisual recording of his having sold the "Animal Mix" DVD to St. Clair.  Cahill's own words make it clear that he knew the contents of the "Animal Mix" DVD.  The

"Animal Mix" DVD was admitted in evidence, and was viewed by the jury. The jury evidently found it to be obscene, which is not surprising, in view of its contents. We conclude that Cahill's trial counsel offered no "alternative," "perfectly valid defense," because there was none.

{¶ 28} Cahill next argues that his trial counsel "did not clearly explain to the jury that the facts and elements stated by the prosecutor are merely allegations and would be disproved by the defense." Had defense counsel promised the jury that the State's allegations would be affirmatively disproven by the defense, a patent impossibility, the jury would likely have been reminded of this promise by the State in closing argument. Instead, defense counsel pointed out that the police had little to show for their four months of "fishing," and pointed out to the jury that whether the DVD was obscene was not pre-determined, but was a determination that the jury would ultimately have to make.

{¶ 29} Cahill then argues that his trial counsel "did not clearly explain to the jury that the evidence would show that the undercover video had a false date." But trial counsel did bring this discrepancy up in opening statement: "And then there is that video that [the prosecutor] described and you'll get an opportunity to see this. And I think the detective – they say it happened on one day. And then you'll look on a video and it has another day."

{¶ 30} Of course, the exact date when Cahill sold St. Clair the "Animal Mix" DVD has no material significance. And counsel presumably knew that St. Clair was going to provide the jury with a plausible, reasonable explanation for the discrepancy. The discrepancy of the date stamp was, at best, a minor fact to raise in attempting to cast some doubt on the "integrity of the investigation." Trying to make too much of it would just make the weakness of this argument all the more apparent to the jury.

## VII.   Trial Counsel Was Not Ineffective During the

## State's Direct Examination of its Witnesses

{¶ 31}   Cahill contends that his trial counsel "made no objections during the direct examination of undercover officer St. Clair, even though some of his testimony contained hearsay, and stated as fact, testimony that was known to be false by [trial counsel]."   First of all, trial counsel did object during the early parts of both the direct and re-direct examinations of St. Clair, essentially to the scope of his testimony.   The objection during direct examination was overruled; the objection during re-direct was sustained.

{¶ 32}   Cahill does not favor us with an indication of what particular objections he thinks his trial counsel should have interposed.   We have reviewed the entire transcript, and we find no obvious grounds for objecting.   Even if trial counsel did, in fact, know that certain parts of St. Clair's testimony was false (which we cannot find from this record), that is not a basis for an objection.

{¶ 33}   The record does not support Cahill's claim that his trial counsel was ineffective during the State's direct examination of its witnesses.

## VIII.   Trial Counsel Was Not Ineffective During

## the Cross-Examination of the State's Witnesses

{¶ 34}   We have reviewed the entire transcript.   Defense counsel's cross-examination of the State's witnesses, in particular of St. Clair, the key witness, was professional and thorough. In fact, St. Clair's cross-examination took 28 transcript pages, three more pages than St. Clair's

original direct examination.

{¶ 35} Cahill first argues that his trial counsel should have established, through his cross-examination of St. Clair, that the report of child pornography had not been substantiated. But counsel did pursue this:

> Q. And any information to further substantiate the information that you got from Zimmerman come out of that surveillance?
>
> A. Against Mr. Melzer [who also worked in the store], Mr. Cahill, or both?
>
> Q. Against Mr. Cahill and the sale of child porn?
>
> A. There was some information that I had obtained, but nothing towards child pornography.

{¶ 36} Again, it was made clear to the jury, throughout the trial, that after a four-month long investigation, no evidence was found that child pornography was being made available at Cahill's store, or by Cahill, himself.

{¶ 37} Cahill next argues that his trial counsel should have cross-examined St. Clair "about the rain in the video allegedly made on July 13, 2010." Defense counsel did question St. Clair concerning the discrepancy in the date. There is nothing in the record to indicate that the appearance of rainwater in the video would have had any significance. Again, the exact date on which Cahill sold the "Animal Mix" video to St. Clair is not of material significance. An effort to make the entire case turn on whether the audiovisual recording of the transaction was made on July 13, 2010, or on some other date in July, would have been counterproductive.

{¶ 38} Finally, Cahill argues that his trial counsel was ineffective for having failed to

challenge St. Clair's credibility in claiming that he had viewed all of the 81 videos that he purchased at the store, which were of an average duration of five hours. Defense counsel did raise the improbability that St. Clair could have watched five videos that he purchased on June 23, 2010, on that same day, before turning them into the property room, as St. Clair had claimed. He later raised the improbability that St. Clair could have watched an even larger number of videos purchased on a later day before turning them into the property room.

{¶ 39} Defense counsel's decision to attack St. Clair's credibility by showing the improbability of St. Clair's having been able to watch five or more videos in the limited time between his purchasing them and his turning them into the property room made for a more effective cross-examination than if defense counsel had focused on all 81 videos over the four-month period of the investigation. We certainly cannot find it to have been ineffective.

## IX. Trial Counsel Was Not Ineffective in Moving for a Judgment of Acquittal

{¶ 40} Cahill contends that his counsel was ineffective in making the motion, after the close of the State's case, for a judgment of acquittal under Crim.R. 29. He refers to counsel's having stated: "I think I'm supposed to make a motion at this time for Rule 29 to drop it because I believe the State has, by virtue of its not presenting a complete video that is allegedly obscene, I – "

{¶ 41} Although it appears that only excerpts of the "Animal Mix" DVD were played for the jury during the trial, the complete DVD had been admitted in evidence when defense counsel moved for a judgment of acquittal. There was no basis for a Crim.R. 29 motion. Nevertheless, it appears to be routine for defense counsel to move for a judgment of acquittal

after the State's case. This is understandable. If a subsequent review of the record, in connection with an appeal, should indicate that there was, in fact, a failure of proof of some essential element of an offense during the State's case, the Rule 29 motion at the end of the State's case preserves that issue for appeal. If a Rule 29 motion is not made at the end of the State's case, the issue may not be preserved for appeal. A comment suggesting that defense counsel, in making a Rule 29 motion, is merely going through the motions, is understandable, and does not constitute ineffective assistance of counsel.

## X. Trial Counsel Was Not, Generally, Ineffective

{¶ 42} Cahill contends that his trial counsel was ineffective for having failed to put on a defense. He contends that defense counsel should have called witnesses "to counter, and in several instances, disprove the testimony of the prosecution's witnesses."

{¶ 43} In a direct appeal, a claim that trial counsel was ineffective for having failed to call witnesses requires some demonstration, in the record, that the uncalled witnesses would have had given probative, material testimony; i.e., that they would have made a difference. The record in this case falls far short of that. St. Clair testified that Cahill sold him the "Animal Mix" DVD, and had an audiovisual recording of the transaction to corroborate his testimony. It seems unlikely that any witnesses could have disproven St. Clair's testimony.

{¶ 44} We have reviewed the entire transcript of the testimony, the opening statements, the closing arguments, and the jury instructions. We find no indication that defense counsel, an experienced criminal defense attorney, was other than professional and effective. The only defense that could be argued to the jury was a general attack on the quality of the police

investigation, combined with an argument that the "Animal Mix" DVD, while repulsive and disturbing, did not meet the legal definition of obscenity, especially in view of the value that our society places on free speech, as exemplified by the First Amendment. Defense counsel presented this defense, in a thorough and professional manner.

{¶ 45} For example, when the prosecutor, in her rebuttal closing argument, equated bestiality with obscenity, arguing to the jury that all it had to find was that the video Cahill sold to St. Clair contained bestiality, defense counsel appropriately objected, and the trial court sustained the objection.[1] The record portrays a defense counsel who was alert, professional, and thorough in his representation of his client.

{¶ 46} For all of Cahill's protestations to the contrary, this was an open-and-shut case, competently presented by the prosecutor. The finest criminal defense lawyer in the land cannot work a miracle. Cahill was not constitutionally entitled to a victorious defense counsel, he was merely entitled to an effective defense counsel; and he had one.

## XI. The Trial Court Did Not Fail to Recognize Ineffective Defense

{¶ 47} In his Second Assignment of Error, Cahill contends that the trial court failed in its "duty to act to assure that defense counsel competently conducts a criminal case." For all of the reasons set forth above, we conclude that the record reflects a defense counsel competently conducting a criminal case. Therefore, the trial court did not fail in its duty to recognize otherwise, and take corrective action.

---

[1] While it is somewhat difficult to think of an example of materials dealing with the subject of bestiality that would not be obscene, it is not impossible. For example, a scientific study discussing the effects of human-animal sexual intercourse on disease vectors in the respective human and animal populations would likely not be obscene, even though dealing with the subject of bestiality.

{¶ 48}   Both of Cahill's assignments of error are overruled.


## XII.   Conclusion

{¶ 49}   Both of Cahill's assignments of error having been overruled, the judgment of the

trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Ronald Cahill
Hon. Dennis J. Adkins